# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 21, 2022

Lyle W. Cayce
Clerk

No. 21-30204

DeOndra Wilson, *individually & as natural tutor on behalf* T. W.;
Thomas Johnson Jr.,

*Plaintiffs—Appellants*,

*versus*

City of Bastrop; Joshua A. Green, *in his individual & official capacity*; John L. McKinney, *in his individual & official capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:20-CV-351

Before Jones, Higginson, and Duncan, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

An armed suspect ran away from two police officers, ignoring their repeated commands to stop and drop his pistol. The pursuit occurred near passing motorists, onlookers, and an apartment complex. The officers shot and killed the suspect, whose successors sued the officers, the city, and the police department under 42 U.S.C. § 1983. The district court granted the officers summary judgment based on qualified immunity and separately

No. 21-30204

dismissed claims as to the city and police department. We affirm in part and dismiss in part for lack of appellate jurisdiction.

I.

In the afternoon of March 19, 2019, the Bastrop Police Department ("BPD") received two reports of an armed confrontation at the Eden Apartments. The first report warned "they are drawing guns." The second identified one perpetrator as "Thomas Johnson," who was driving a red truck with rims. Officer Joshua Green responded to the reports.

Approaching the apartments, Green encountered a stationary red truck with flashing hazards near the H.V. Adams Elementary School, which had been closed for a few months. The truck matched the reported description, so Green initiated a stop.[1] The truck began to pull away, so Green instructed the driver to stop, which he did. From his squad car, Green reported the license plate. Green then instructed the driver to turn off the engine, which he did. When Green exited his car, Thomas Johnson III ("Johnson") stepped out of the truck's passenger side holding a semiautomatic pistol with an extended magazine. (His brother—named Thomas Johnson, Jr.—was driving the car). Green ordered Johnson to shut the door, but Johnson ignored him and ran toward the school, sparking an armed chase that would span approximately two minutes.

As vehicles passed nearby, Green drew his weapon and yelled, "Drop the gun!" When Johnson failed to comply and continued to run, Green fired at him. Green chased Johnson into the adjacent open field away from the road

---

[1] The stop and ensuing events were captured in part by Green's dash cam. *See* https://www.ca5.uscourts.gov/opinions/pub/21/21-30204-Ex5-Green.mp4. They were also captured in part by Officer John McKinney's dash cam. *See* https://www.ca5.uscourts.gov/opinions/pub/21/21-30204-Ex9-Mckinney.mp4. The panel carefully reviewed the footage.

No. 21-30204

and reported "shots fired!" over his radio. Green recalled seeing Johnson looking over his shoulder at him and the barrel of the gun pointing back in his direction. He continued to chase Johnson across the field, ordering him to drop the gun and instructing onlookers to lie on the ground.

Officer John McKinney responded to Green's radio call, heard the distant gunshots, and proceeded to the opposite side of the field. When he arrived, he saw Johnson approaching his squad car, outrunning Green. Johnson saw McKinney and changed direction toward the tree line bordering the Eden neighborhood. McKinney ordered Johnson to stop and drop the gun. When he did not, McKinney fired from his squad car at Johnson, who stumbled, looked at McKinney, picked up his gun, and continued to flee. McKinney stepped out of his squad car and fired three more shots. Both officers gave chase and repeatedly ordered Johnson to stop and drop the gun as he approached the tree line. When in range, both officers shot, and Johnson fell and dropped his gun. Johnson died on the scene from the gunshot wounds.

Plaintiffs-Appellants DeOndra Wilson, on behalf of herself and her minor child T. W., and Thomas Johnson Jr., the twin brother of Johnson (collectively, "Plaintiffs"), sued under 42 U.S.C. § 1983, alleging that Green and McKinney used excessive force and that the City of Bastrop ("city") and the BPD failed to train, supervise, and discipline their employees. The district court allowed limited qualified-immunity discovery. Green and McKinney moved for summary judgment based on qualified immunity, which the district court granted.

In the same order, the district court notified Plaintiffs of its intent to dismiss *sua sponte* their remaining claims against the city and BPD. Plaintiffs objected. Shortly after, Plaintiffs appealed the partial final judgment as to Green and McKinney. The district court then granted summary judgment

No. 21-30204

for the city and BPD and entered another final judgment to that effect. Plaintiffs did not file a new notice of appeal from the second judgment or amend their initial notice of appeal.

## II.

"We review a summary judgment *de novo*, applying the same standards as the district court." *Arenas v. Calhoun*, 922 F.3d 616, 620 (5th Cir. 2019) (citation omitted). "The movant must show 'there is no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law.'" *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020) (alteration in original) (quoting FED. R. CIV. P. 56(a)), *cert. denied*, 141 S. Ct. 1058 (2021). An "assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available," though "[w]e still draw all inferences in the plaintiff's favor." *Ibid.* (citations omitted).

## III.

An officer merits qualified immunity unless (1) he "violated a statutory or constitutional right of the plaintiff" and (2) "the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted). Plaintiffs claim that Green and McKinney used unconstitutionally excessive force when they shot and killed Johnson. The district court concluded, first, that their use of deadly force was not constitutionally excessive and, alternatively, that any violation was not clearly established. We agree with the first conclusion and so need not reach the second. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"An officer violates the Fourth Amendment when an arrestee 'suffers an injury that results directly and only from a clearly excessive and objectively unreasonable use of force.'" *Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (quoting *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir.

2020)). The court evaluates officers' actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)), and considers "not only the need for force, but also 'the relationship between the need and the amount of force used,'" *Joseph*, 981 F.3d at 332 (quoting *Deville v. Marcantel*, 567 F.3d 156, 167 (2009) (per curiam)). We assess each officer's actions separately. *Darden v. City of Fort Worth*, 880 F.3d 722, 731 (5th Cir. 2018).

When an officer uses deadly force, its reasonableness turns primarily on whether "the officer ha[d] probable cause to believe that the suspect pose[d] a threat of serious physical harm, either to the officer or to others." *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 488, 493 (5th Cir. 2001) (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)); *see also Ontiveros v. City of Rosenberg*, 564 F.3d 379, 382 (5th Cir. 2009). Given the difficulty of "split-second judgments," the court judges the reasonableness of an officer's use of force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *Graham*, 490 U.S. at 397 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)), and avoids "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation," *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir.) (per curiam) (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)), *cert. denied*, 140 S. Ct. 454 (2019).

## A.

Green could have reasonably believed Johnson posed a serious physical threat to bystanders and to Green himself. Just before the stop, Green had reason to think Johnson was brandishing a firearm at an apartment complex. He was the lone officer to respond to the call. Green found a vehicle matching the reported description parked by an elementary school during

school hours and on a school day. While the school had been closed for a few months, students were travelling nearby that afternoon—as evidenced by the school bus passing Green's squad car moments after the stop.[2] Moreover, Green believed he saw a weapon through the rear window and then watched Johnson step out of the car holding a pistol with an extended magazine. Instead of obeying Green's orders, Johnson ran toward the school with the gun and then refused to heed Green's command to drop the gun. Only then did Green fire.

As Green chased Johnson, he repeatedly ordered Johnson to stop and drop the gun. Yet Johnson disobeyed and ran directly toward another officer before disappearing from sight. Green heard gunshots and reloaded. Johnson emerged from behind brush, tripped, picked up his gun, and continued to ignore Green and run toward the Eden neighborhood. Green saw more onlookers nearby and again shot, this time killing Johnson.

Even drawing all inferences in Plaintiffs' favor, the district court correctly determined that Green's use of deadly force was not constitutionally excessive. Plaintiffs' contrary arguments lack merit. First, they maintain *Tennessee v. Garner* requires reversal. We disagree. In *Garner*, a police officer shot a fleeing, unarmed suspect in the back of the head and later admitted he did not believe the suspect was armed. 471 U.S. at 3–4. The suspect there presented no threat to others precisely because he was unarmed. *Id.* at 21 (recognizing the officer "did not have probable cause to believe that Garner, whom he correctly believed to be unarmed, posed any physical danger to himself or others"). As *Garner* recognized, the armed

---

[2] Green could not recall whether he knew the school was closed at the time, but that is immaterial to our analysis.

suspect here "present[s] a different situation," *ibid.*, so this case is obviously not *Garner* 2.0.

Second, Plaintiffs argue that when Green stopped the vehicle, any threat to others (especially those at Eden Apartments) had vanished, so deadly force became unreasonable at that point. True, our precedent teaches that "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Betts v. Brennan*, 22 F.4th 577, 584 (5th Cir. 2022) (quoting *Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015)). But the inverse is also true. Force unreasonable in one moment may become reasonable in the next. So here. When Johnson ran, armed and disobeying Green's commands to drop the gun despite the presence of onlookers, Green's use of deadly force became justified.

Third, Plaintiffs contend that Green is not credible because he testified that he saw Johnson point a gun at him while inside the truck even though he never stated that during the police's internal investigation. This possible lacuna in Green's testimony is immaterial to the constitutional issue. Even assuming Johnson did not point a gun at Green's squad car, the undisputed facts still justified the exercise of lethal force. Johnson stepped out of the car holding a gun; ran toward onlookers, another officer, and an apartment complex; and ignored numerous orders to stop and drop the gun. Plaintiffs also attack Green's credibility based on his inability to recall whether he knew the nearby school was closed. Again this is of no moment. Even assuming he knew the school was closed, Green could still have reasonably believed Johnson posed a serious threat to his own safety, McKinney's safety, and the safety of onlookers (including passing schoolchildren) in the area.

Fourth, Plaintiffs argue that Johnson never fired his weapon, so he did not pose a threat. Our precedent rejects that argument: "we have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016) (collecting cases). By the same token, officers need not wait until a fleeing suspect turns his weapon toward bystanders before using deadly force to protect them. *See Boyd v. Baeppler*, 215 F.3d 594, 601 (6th Cir. 2000) (deadly force justified when suspect fled with a pistol and disregarded police warnings to stop); *Montoute v. Carr*, 114 F.3d 181, 185 (11th Cir. 1997) (deadly force justified when suspect fled with a sawed-off shotgun and disregarded officer's command to stop).[3]

Finally, Plaintiffs point out that Louisiana law allows open carry of firearms. *See State v. Ferrand*, 95-1346 (La. 12/8/95), 664 So.2d 396, 397 (per curiam) (noting "the public possession of an openly displayed handgun is not a crime in Louisiana" (citations omitted)). That is beside the point. Louisiana's open-carry law does not permit armed suspects to flee from officers and disobey lawful commands to relinquish their guns. *See State v. Gibson*, 12-350 (La. App. 5 Cir. 10/30/12), 103 So.3d 641, 650 (officer had "probable cause to arrest defendant after he was observed fleeing [from police] with a gun"). That is especially true here, where Johnson's failure to

---

[3] For similar reasons, we reject Plaintiffs' argument that Johnson posed no threat because he never actually aimed his gun at an officer. Plaintiffs identify no basis for second-guessing an officer's split-second judgment that a fleeing, armed suspect could turn a gun on him at a moment's notice. *See, e.g.*, *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008) (rejecting argument that suspect "made no threatening gestures toward the officers" and "never raised his weapon nor aimed it at the officers" because it "largely employed 20/20 hindsight" and "fail[ed] to consider the reasonable belief of an officer at the scene"). Moreover, even if the gun was never pointed toward the officers, they could have reasonably thought Johnson posed a serious threat to onlookers.

obey Green's commands created a situation threatening serious harm to officers and bystanders alike.

B.

Like Green, McKinney could have reasonably believed that Johnson threatened him and others with serious physical harm. McKinney heard distant gunshots and a "shots fired!" call over his radio, leaving him unsure whether the officer or the suspect had fired. When he arrived at the scene, Johnson was running at him holding a gun but changed direction toward a tree line bordering a neighborhood. Johnson repeatedly ignored McKinney's orders to stop and drop the gun. Even after McKinney fired at Johnson, he kept his gun and continued to flee. And during the chase, McKinney spotted Green nearby. McKinney again used lethal force, this time killing Johnson.

As to McKinney specifically, Plaintiffs argue he never faced any threat because he mistakenly believed Johnson had shot Green based only on the "shots fired" radio call. But even assuming McKinney's belief was mistaken, it can still be a reasonable belief. *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (noting "qualified immunity can apply in the event the mistaken belief was reasonable"); *see also Carnaby v. City of Houston*, 636 F.3d 183, 188 n.4 (5th Cir. 2011). And nothing in the record shows McKinney was unreasonable in thinking Johnson had fired his weapon. Moreover, aside from this question, the circumstances still justified the exercise of lethal force, as McKinney could have reasonably believed that the fleeing Johnson, who persistently held onto his gun against the officers' orders, presented a threat to his safety, Green's safety, and the safety of onlookers in the Eden neighborhood.

*       *       *

In sum, both Green and McKinney reasonably believed that Johnson—(1) suspected of an armed confrontation, (2) fleeing as police attempted to detain him, (3) running towards one of the officers in the

presence of bystanders, (4) armed with a semiautomatic pistol, and (5) refusing to obey audible police commands to drop his weapon—posed a threat of serious physical harm to themselves and bystanders. We therefore agree with the district court that the lethal force each officer deployed was not constitutionally excessive.

## IV.

When granting summary judgment to the officers, the district court notified Plaintiffs of its intent to dismiss *sua sponte* their municipal-liability claims against the city and BPD. *See Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) ("District courts may grant summary judgment *sua sponte* if the party opposing summary judgment has notice." (citing *Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 481 (5th Cir. 2016))) Plaintiffs then noticed their appeal of the court's qualified-immunity order and partial final judgment. Following that, the district court entered summary judgment over Plaintiffs' objection in favor of the city and BPD and issued another partial final judgment to that effect. Without filing a new notice of appeal or amending their initial notice, Plaintiffs now argue dismissal of those claims was improper without more discovery.

Plaintiffs did not appeal the later summary judgment as to the city and BPD. While Plaintiffs' initial notice of appeal "sufficiently preserve[d] all prior orders intertwined with the final judgment," *Tr. Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1485 (5th Cir. 1997), the summary judgment dismissal of Plaintiffs' municipal-liability claims was a subsequent, not a prior, order. We therefore lack jurisdiction to review it. *See* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(1)(A).

No. 21-30204

## V.

We AFFIRM the summary judgment granting qualified immunity to the officers. As to the city and police department, we DISMISS the appeal for want of jurisdiction.