# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 17, 2022

Lyle W. Cayce
Clerk

No. 21-60688

Olecia James,

*Plaintiff—Appellant*,

*versus*

The Cleveland School District; Dr. Lisa Bramuchi, *in her individual and official capacity*; Dr. Randy Grierson, *in his individual and official capacity*; Dr. Jacqueline Thigpen, *in her individual and official capacity*; Richard Boggs, *in his individual and official capacity*; Todd Fuller, *in his individual and official capacity*; Dr. Chresteen Seals, *in her individual and official capacity*; Tonya Short, *in her individual and official capacity*; George Evans, *in his individual and official capacity*,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 4:19-CV-66

Before Smith, Duncan, and Oldham, *Circuit Judges*.

Stuart Kyle Duncan, *Circuit Judge*:

Olecia James was a model student with reason to hope she would graduate second in her high school class. But, as the result of a longstanding desegregation decree, her high school was consolidated with another school

before her senior year. This reshuffled the class rankings, and James ended up third. She sued school officials, alleging she had been denied due process of law under the Fourteenth Amendment. The district court correctly dismissed her claims. James alleges only a property interest, but she has no such interest in her class ranking or in the points awarded for her courses. This defeats both her procedural and substantive due process claims.

That James did not end up class salutatorian may seem unfair. It was surely disappointing. But it was not unconstitutional.

We affirm the district court's judgment.

## I.

Based on a fifty-year-old desegregation consent decree, a federal judge ordered the consolidation of Cleveland, Mississippi's two high schools—East Side High School ("ESHS") and Cleveland High School ("CHS"). *See Cowan v. Bolivar Cnty. Bd. of Educ.*, 186 F. Supp. 3d 564, 621 (N.D. Miss. 2016); *Cowan v. Bolivar Cnty. Bd. of Educ.*, No. 2:65-CV-31 (N.D. Miss. July 22, 1969). Olecia James, a displaced rising senior at ESHS, enrolled in the newly opened Cleveland Central High School ("CCHS"). James was by any metric a model student. She played basketball, participated in mock trial, and was elected homecoming queen. She also excelled academically, contending for valedictorian and salutatorian. But the consolidation made the race tighter than usual, with more students now vying for fewer honors.

To complicate matters, the consolidated high schools had both failed, at times, to follow the Cleveland School District's handbook when awarding course credit and quality points for the preceding three years. The handbook designated each course as "regular" (4 points), "accelerated" (5 points), or "advanced" (6 points) based on the course's rigor. Due to slipups in a handful of courses, CCHS seniors with identical grades in identical courses had received different quality points on their transcripts. That error bled over

into the class ranking, where even a minor quality point discrepancy reshuffled the rank and, ultimately, who would receive graduation honors.

Weeks before graduation, Superintendent Jacqueline Thigpen and Assistant Superintendent Lisa Bramuchi diagnosed the problem and, in the interest of fairness, set out to align all transcripts with the handbook retrospectively. CCHS counselors independently reviewed each senior's transcript and flagged any errors. The District then altered the transcripts (including James's) to match the handbook and distributed the updated transcripts to CCHS seniors, who could dispute any discrepancies.

James and her family were understandably caught off guard by her altered quality point average. The next day, they met with Thigpen, who vowed to restore James's quality points, though her transcript would be inconsistent with the handbook. James and her family also met with CCHS Principal Randy Grierson and appeared at the regular school board meeting to complain about the unfairness of last-minute transcript changes. After the meetings, James received an updated transcript, which credited her with the quality points her family had requested.

Two days later, Thigpen backtracked again after meeting with another disgruntled parent. This time her decision was final: all CCHS seniors would receive the same credit and weight for identical courses, consistent with the handbook. James's transcript was again altered. Thigpen deemed it the fairest outcome for a bad situation. The District printed the updated transcripts and distributed them to all CCHS seniors.

Once teachers finalized spring grades, Principal Grierson announced the final class rankings. K.B., a black female from ESHS, graduated valedictorian. W.M., a white male from CHS, ranked second. James, a black female, finished third. James contested her rank, but Thigpen and Bramuchi claimed they could not alter the course weights against the handbook.

No. 21-60688

James sued Bramuchi, Thigpen, Grierson, the District, and the school board members under 42 U.S.C. § 1983, alleging a conspiracy to strip her of salutatorian honors in violation of Mississippi law as well as her federal due-process and equal-protection rights. Invoking qualified immunity, the defendants moved for summary judgment, which the district court granted in their favor. *James v. Cleveland Sch. Dist.*, No. 4:19-CV-66-DMB-RP, 2021 WL 3277239, at *1 (N.D. Miss. July 30, 2021). The court found no constitutional violation, reasoning in a meticulous opinion that James produced no evidence that she was deprived of quality points (due process), nor that the calculation had any discriminatory effect or purpose (equal protection). *Id.* at *13–22. James timely appealed, preserving only her procedural and substantive due process claims against school officials Thigpen, Bramuchi, and Grierson.

## II.

We review summary judgments *de novo. Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019); Fed. R. Civ. P. 56(a). Because the officials invoked qualified immunity, James bore the burden "to show that the defense is not available, though we still draw all inferences in [her] favor." *Wilson v. City of Bastrop*, 26 F.4th 709, 712 (5th Cir. 2022) (cleaned up). Government officials merit qualified immunity unless (1) they "violated a statutory or constitutional right of the plaintiff" and (2) "the right was clearly established at the time of the violation." *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020) (citation omitted).

## III.

James contends the school officials violated her rights under the Due Process Clause of the Fourteenth Amendment, which provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Her due process claims

No. 21-60688

come in two varieties—"procedural" and "substantive"—which we address separately. *See generally United States v. Salerno*, 481 U.S. 739, 746 (1987) (distinguishing the two concepts) (citations omitted).

## A.

First, the procedural variety. A procedural due process claim turns on "'(1) whether there exists a liberty or property interest which has been interfered with by the State,' and (2) 'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228–29 (5th Cir. 2020) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Without a cognizable interest in liberty or property, "there is nothing subject to Due Process protections and our inquiry ends." *Hampton Co. Nat. Sur., LLC v. Tunica County*, 543 F.3d 221, 225 (5th Cir. 2008) (citation omitted). James claims only a property interest. Namely, she asserts an interest in "continued receipt of an education pursuant to the rules adopted by the school board as well as the laws the Mississippi Legislature adopted to govern public schools in this state."[1]

The district court assumed James had a cognizable property interest. Specifically, the court assumed James alleged a property interest in two "aspect[s]" of her public education—rules on class rankings and rules assigning quality points to specific courses, both contained in the school's curriculum guide for James's graduating year. Based on those assumptions, the court engaged in a detailed analysis and found James had not been

---

[1] To the extent James claims a protected interest based on the District's altering other students' transcripts, she can have no property interest in the benefit or punishment of a third party. *See Planned Parenthood of Greater Tex. Fam. Plan. & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 356–57 (5th Cir. 2020) (citing *O'Bannon v. Town Ct. Nursing Ctr.*, 447 U.S. 773, 785 (1980)).

deprived of either interest because the school calculated her rank and quality points correctly. While we respect the court's meticulous analysis (and see no reason to doubt its correctness), the court's threshold assumption that James had a cognizable property interest was unwarranted.

"[W]hether a state-created property interest 'rises to the level' of a constitutionally-protected interest is a matter of federal constitutional law." *Wigginton v. Jones*, 964 F.3d 329, 336 (5th Cir. 2020) (quoting *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 757 (2005)). By establishing a compulsory school system, a state creates a property interest in "entitlement to a public education . . . protected by the Due Process Clause." *Goss v. Lopez*, 419 U.S. 565, 574 (1975). Accordingly, a student may not be expelled or suspended from a public school "without adherence to the minimum procedures required by that Clause." *Id.* at 574. Applying *Goss*, our cases have explained that due process is triggered only by "a student's 'total exclusion from the educational process.'" *Swindle v. Livingston Par. Sch. Bd.*, 655 F.3d 386, 401 (5th Cir. 2011) (quoting *Goss*, 419 U.S. at 576). Thus, a student must receive due process before being denied state-guaranteed access to an alternative education, *ibid.*, or before being suspended from school for ten days, *Harris ex rel. Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011); *see also Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26 (5th Cir. 1997) ("The Supreme Court has held that the suspension from school without some kind of notice and hearing may violate property and liberty interests." (citing *Goss*, 419 U.S. 565)).

Our precedents are equally clear, however, that students lack "any protected interest in the separate components of the educational process." *Nevares*, 111 F.3d at 27. This means "no protected property interest is implicated" when a school declines to offer a student "a particular curriculum" or denies "participation in interscholastic athletics." *Ibid.* (citing *Arundar v. DeKalb Cnty. Sch. Dist.*, 620 F.2d 493 (5th Cir. 1980);

No. 21-60688

*Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152 (5th Cir. 1980)); *see also Niles v. Univ. Interscholastic League*, 715 F.2d 1027, 1031 (5th Cir. 1983) ("A student's interest in participating in interscholastic athletics falls 'outside the protections of due process.'" (quoting *Mitchell v. La. High Sch. Athletic Ass'n*, 430 F.2d 1155, 1158 (5th Cir. 1970))). And we have favorably cited sister circuit precedent holding that students lack due process interests in "particular incidents of education such as sports or advanced placement classes or attending a particular school." *Nevares*, 111 F.3d at 27 (citing *Seamons v. Snow*, 84 F.3d 1226, 1234–1235 (10th Cir. 1996)).[2]

It follows that students lack due process interests in their class rank or in the quality points assigned to their courses. Indeed, we have already stated this principle in a previous (albeit unpublished) opinion rejecting a challenge to the same District's policies for choosing valedictorians: "While students have a property interest in receiving a state-provided public education, there is no free-standing right to class honors." *Shepard v. Cleveland Sch. Dist.*, 822 F. App'x 312, 313 (5th Cir. 2020) (per curiam) (citing *Goss*, 419 U.S. 565).[3]

---

[2] In light of that, we respectfully disagree with the district court that a student may have a property interest in "an *aspect* of her public education (rather than the education as a whole)." For that proposition, the court relied on our unpublished decision in *Shepard*, but as we explain below, *Shepard* does not support it. *See Shepard v. Cleveland Sch. Dist.*, 822 F. App'x 312 (5th Cir. 2020) (per curiam). But even if it did, published decisions from our court reject the notion that a student has a property interest in "incidents" or "components" of his or her public education. *See Nevares*, 111 F.3d at 27 (collecting cases). In any event, our cases are also clear that a student's property interest consists only in not being "totally excluded" from a state-created right to public education. *See Swindle*, 655 F.3d at 401; *see also Goss*, 419 U.S. at 576.

[3] James makes no colorable attempt to link her putative interests to any state-created right. For instance, she points to a statute affording "the superintendent of schools" the "power[], authority, and dut[y] . . . [t]o enforce . . . the courses of study provided by law or the rules and regulations of the State Board of Education." MISS. CODE ANN. § 37-9-14(2). This statute says nothing about class rank or quality points. It

No. 21-60688

Said another way: a student's not being chosen salutatorian or not getting specific course points is not the "total exclusion from the educational process," *Swindle*, 655 F.3d at 401, that would trigger due process safeguards.

That is a relief. It would be a fool's errand to try to write federal due process rules governing how schools should award honors or how many quality points an Algebra II class should get. Federal judges have no business constitutionalizing such matters. "If [we] wanted to do that, [we] would have run for school board." *Oliver v. Arnold*, 19 F.4th 843, 862 (5th Cir. 2021) (Duncan, J., dissenting from denial of rehearing en banc). Our late colleague Judge Tom Reavley summed this point up perfectly:

> We recognize the importance of trust and confidence between students and school administrators. For that reason the student and parents must be treated fairly and given the opportunity to explain [their views]. But that is for [the State] and the local schools to do. We would not aid matters by relegating the dispute to federal litigation. And because the United States Constitution has not been offended in the present dispute, we retire from it.

*Nevares*, 111 F.3d at 27.

---

does not even apply to one of the school officials (Principal Grierson). Even as to a superintendent, the statute leaves her discretion over how to "enforce . . . courses of study," *ibid.*, which means the statute cannot create a property interest. *See, e.g.*, *Town of Castle Rock*, 545 U.S. at 756 ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."); *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) ("Discretionary statutes do not give rise to constitutionally protectable interests."). Finally, James fails to identify any mandatory state "rules" or "regulations" pertaining to class rank or course points.

B.

Second, James also frames her claim under "substantive" due process. The Supreme Court recently clarified how to assess this kind of claim. *See Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022). The "liberty" protected by the Due Process Clause of the Fourteenth Amendment, the Court explained, includes "two categories of substantive rights[:]" (1) "rights guaranteed by the first eight Amendments" and (2) "a select list of fundamental rights that are not mentioned anywhere in the Constitution." *Id.* at 2246. Under either category, a right must be "deeply rooted in [our] history and tradition" and must be "essential to our Nation's 'scheme of ordered liberty.'" *Ibid.* (quoting *Timbs v. Indiana*, 139 S. Ct. 682, 686 (2019); *McDonald v. Chicago*, 561 U.S. 742, 764, 767 (2010); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997)).

James's claim immediately runs aground, however, because she alleges only a property interest and not a liberty interest. As already explained, James has no cognizable property interest in the components of her public education. Under our precedent, this lack of a property interest dooms her substantive due process claim by definition. *See Edionwe v. Bailey*, 860 F.3d 287, 292 (5th Cir. 2017) ("The first inquiry in every due process challenge—whether procedural or substantive—is whether the plaintiff has been deprived of a protected interest in property or liberty."); *Mahone v. Addicks Utility Dist. Of Harris Cnty.*, 836 F.2d 921, 929 n.8 (5th Cir. 1998) ("Since no liberty interest is alleged here, and since [Appellant's] allegations of a property interest are inadequate, both [Appellant's] procedural due process and substantive due process claims must fail.").

Despite the shortcomings of James's theories, we underscore that civil rights laws continue to offer a remedy to students who may be unjustly

No. 21-60688

stripped of academic or athletic honors by way of discrimination.[4] But James has concededly abandoned any such claim in this case.

## IV.

The district court's judgment is AFFIRMED.

---

[4] *See, e.g.*, Intervenor-Plaintiffs' Mem. in Support of Mot. to Intervene, *Tennessee v. U.S. Dep't of Educ.*, No. 3:21-CV-308, 2021 WL 8314850 (E.D. Tenn. Oct. 4, 2021) (seeking to intervene on behalf of female athletes to challenge DOJ Title IX guidance and arguing "allowing males to compete in women's sports takes away female roster spots and reduces their limited chances of receiving college scholarships"); *see also Tennessee v. U.S. Dep't of Educ.*, No. 3:21-CV-308, 2022 WL 2791450 (E.D. Tenn. July 15, 2022) (granting plaintiffs' motion for preliminary injunction); *Hornstine v. Township of Moorestown*, 263 F. Supp. 2d 887, 904 (D.N.J. 2003) (declining to dismiss ADA discrimination claim when a special needs senior alleged stripping of valedictorian honors based on his disability).