# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 4, 2026

Lyle W. Cayce
Clerk

———————

No. 25-20326

———————

SHAMARA JENKINS, *Individually and on behalf of* THE ESTATE OF DONTEL THOMPSON,

*Plaintiff—Appellee*,

*versus*

DEVIN INOCENCIO,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:25-CV-1401

_____

Before WIENER, HAYNES, and GRAVES, *Circuit Judges*.

PER CURIAM:[*]

Officer Devin Inocencio fatally shot Dontel Thompson while Thompson was fleeing the scene of an armed robbery that he had committed. Thompson's mother, Shamara Jenkins, sued Inocencio under 42 U.S.C. § 1983 for using excessive force. Inocencio moved to dismiss the action on

_____

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 25-20326

qualified immunity grounds. The district court denied Inocencio's motion. We REVERSE and RENDER.

## I.    Background

In April 2023, while conducting surveillance, officers with the Houston Police Department observed Thompson rob a store at gunpoint. Thompson left the store and entered a nearby neighborhood. Officers soon located Thompson and attempted to make contact. Two officers exited a vehicle and approached Thompson from the side, one of them exclaiming: "Put your hands up. Get on the ground." When approached, Thompson, gun in hand, fled in Inocencio's general direction. Inocencio exited the vehicle he was in at about the same time as the other officers. After exiting the vehicle and identifying Thompson, Inocencio told Thompson: "Put your f***ing hands up." Thompson, still grasping his handgun, was running in the direction of Inocencio and at least one other officer. Within moments of telling Thompson to put his hands up, Inocencio began firing at Thompson. Thompson later died due to his injuries.

Jenkins sued Inocencio, individually and on behalf of Thompson's estate, under § 1983 for Inocencio's alleged violation of the Fourth Amendment and also asserted standalone claims of wrongful death and survival. Inocencio filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), contending that Jenkins failed to state a claim and that he is entitled to qualified immunity. The district court summarily denied Inocencio's motion. Inocencio timely appealed.

## II.    Jurisdiction & Standard of Review

We have jurisdiction over this appeal "[b]ecause qualified immunity is a defense to both liability and the obligation 'to stand trial or face the other burdens of litigation,'" so, as a result, "a district court's denial of qualified immunity is appealable despite the absence of a final judgment." *Trevino v.*

No. 25-20326

*Iden*, 79 F.4th 524, 530 (5th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 671–72 (2009)); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"We review de novo a district court's refusal to dismiss on the basis of qualified immunity." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). When doing so, "we must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party." *Id.* But "we do not presume true a number of categories of statements, including legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678). Further, "where video recordings are included in the pleadings, as is the case here, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual allegations in the complaint if the video 'blatantly contradict[s]' those allegations." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).[1]

### III.    Discussion

On appeal, Inocencio contends that he is entitled to qualified immunity. We agree.

---

[1] When filing his motion to dismiss, Inocencio included a link to a video containing various officers' body-worn-camera footage capturing the events as they unfolded. Although the video was not included in Jenkins's complaint, it is referenced in Jenkins's complaint, and the complaint includes a screenshot from the video. On appeal, both parties cite and rely on the video. Accordingly, the video may be properly considered and, where it contradicts Jenkins's allegations, the video controls. *See Sligh v. City of Conroe*, 87 F.4th 290, 298 (5th Cir. 2023) (per curiam); *see also IAS Servs. Grp., L.L.C. v. Jim Buckley & Assocs., Inc.*, 900 F.3d 640, 646–47 (5th Cir. 2018) ("Review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." (citation modified)).

No. 25-20326

At the motion-to-dismiss stage, an officer is entitled to qualified immunity "unless the plaintiff[] ha[s] alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct." *Harmon*, 16 F.4th at 1163 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Jenkins cannot satisfy this standard.

We begin (and end)[2] with the alleged violation of a constitutional right. In a case such as this, "the relevant Fourth Amendment questions are whether the force was 'excessive' and 'unreasonable' as 'judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Indeed, the requisite analysis accounts "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97.

When "evaluating whether the officer used 'excessive' force, courts consider the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Harmon*, 16 F.4th at 1163 (quoting *Graham*, 490 U.S. at 396). In doing so, we look at the "totality of the circumstances." *Barnes v. Felix*, 605 U.S. 73, 76 (2025) (quoting *Graham*, 490 U.S. at 396). All these factors weigh in Inocencio's favor,[3] though where deadly force is used, the "threat-of-harm factor

_____

[2] *See Carmona v. City of Brownsville*, 126 F.4th 1091, 1096 (5th Cir. 2025) (declining, at the motion to dismiss stage, to get to the second prong where the plaintiff failed to plausibly allege a constitutional violation).

[3] As for the severity of the crime, this factor weighs in Inocencio's favor because the officers observed Thompson commit an armed robbery and flee the scene. The next factor, whether Thompson was actively resisting or attempting to evade arrest, also weighs

typically predominates." *See Harmon*, 16 F.4th at 1163. Because "an officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others," *id.* (citation modified), we must determine whether Inocencio could have reasonably believed that Thompson posed a serious threat of harm.

The video shows that Inocencio could have reasonably believed that Thompson posed a serious physical threat to another officer or Inocencio himself. "The reasonableness inquiry is inherently factbound, making the video of this . . . event critical." *Id.* at 1164. The video, which includes views from multiple officers' bodycams, shows that, just after committing an armed robbery, Thompson: fled from officers when they attempted to make contact; ignored numerous commands to either put his hands up or get on the ground; ran in the direction of Inocencio and at least one other officer; held a gun in one hand (or the other) during the entire duration of his flight;[4] and came within only a few feet of Inocencio during this flight. Moreover, the video also clarifies that Inocencio began to shoot at Thompson when Thompson was only a few feet in front of Inocencio[5] and the core of the incident lasted

---

in Inocencio's favor because, as the video demonstrates, Thompson was fleeing from officers and refused to yield to their commands.

[4] "[W]hether the suspect is armed is often the key factor in determining if a threat to the officer justifies the use of deadly force." *Poole v. City of Shreveport*, 13 F.4th 420, 425 (5th Cir. 2021) (citing *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)).

[5] We cannot accept as true Jenkins's assertion that Thompson "was clearly attempting to avoid . . . Inocencio as he fled from officers by running past . . . Inocencio before gunshots were even fired," as the video belies this assertion. *See Scott*, 550 U.S. at 380. The fact that the autopsy report reflects that Thompson was shot from behind is not dispositive. That is, the video demonstrates that Inocencio began firing at Thompson while he was in front of Inocencio—not while Thompson's back was turned. Inocencio's first shot may have missed Thompson, but, in all events, the use of force began while Thompson was in front of and running toward Inocencio.

only 11 seconds.[6] What is more, even when Thompson passed Inocencio, while Inocencio continued to shoot Thompson, Thompson was still running toward at least one other officer and further into a neighborhood. These circumstances clarify that Inocencio could have reasonably believed that Thompson posed a serious physical threat justifying the use of deadly force.

Jenkins's arguments to the contrary are without merit. For instance, Jenkins contends that Thompson "did not pose a threat of serious physical harm" because, in part, he "did not point or raise a weapon at any officer or other person, made no furtive moves or gestures, [and] did nothing indicating he was going to use a weapon against any officers or others." But we cannot agree. In fact, we have rejected such an argument, focusing on a litigant's failure to identify any "basis for second-guessing an officer's split-second judgment that a fleeing, armed suspect could turn a gun on him at a moment's notice." *Wilson v. City of Bastrop*, 26 F.4th 709, 715 n.3 (5th Cir. 2022) (citing *Ramirez v. Knoulton*, 542 F.3d 124, 129 (5th Cir. 2008)).[7] Jenkins's reliance

_____

[6] This is the duration from the time officers first made contact with Thompson to the moment Inocencio fired the last shot. The duration from the time at which Inocencio exited his vehicle and confronted Thompson is even shorter. In this vein, although "a warning must be given, when feasible, before the use of deadly force," *Poole*, 13 F.4th at 425 (citation omitted), contrary to her assertions and after taking the video into account, Jenkins has failed to demonstrate that it was feasible, after having ordered Thompson to put his hands up (which he did not), to provide a warning that deadly force would be used in this case.

[7] As Jenkins points out, this principle often applies in situations where "a suspect reaches into areas where a gun could be hidden out of an officer's line of sight or makes other types of furtive gestures such as suddenly reaching into their waistband." *Ramirez v. Granado*, 163 F.4th 204, 210 (5th Cir. 2025) (per curiam), *reh'g en banc denied*, 167 F.4th 807 (5th Cir. 2026), *petition for cert. filed* (U.S. June 1, 2026) (No. 25-1338). But we have also applied this principle in situations where that is not the case. *See, e.g.*, *Wilson*, 26 F.4th at 714 ("Johnson emerged from behind brush, tripped, picked up his gun, and continued to ignore Green and run toward the Eden neighborhood. Green saw more onlookers nearby and again shot, this time killing Johnson."); *id.* at 714–15 & n.3 (rejecting the plaintiff's assertions that force was unreasonable because the fleeing suspect never fired his weapon

on *Ramirez v. Granado*, 163 F.4th 204 (5th Cir. 2025) (per curiam), *reh'g en banc denied*, 167 F.4th 807 (5th Cir. 2026), *petition for cert. filed* (U.S. June 1, 2026) (No. 25-1338), is also of no moment. *Ramirez*'s and this case's facts are quite dissimilar. The question in *Ramirez* was whether the *continued* use of deadly force was reasonable while Ramirez fled from officers after an initial engagement and a pause in the engagement. *Id.* at 209. Not so here. There was no similar pause in the engagement.[8] But more importantly, unlike *Ramirez*, the video shows that Inocencio shot at Thompson, who held a gun in his hand, while Thompson was in front of and running toward Inocencio and continued to engage Thompson as he was running past Inocencio in the direction of another officer.[9] This is not like *Ramirez*. *See id.* at 211 ("Officer Granado did not know Ramirez was armed, observed Ramirez flee from the officers with his back turned, and never saw Ramirez turn toward the officers during his flight."). Jenkins's pleading cannot survive Inocencio's motion to dismiss.

## IV.     Conclusion

For the forgoing reasons, Inocencio is entitled to qualified immunity. Accordingly, we REVERSE the district court's denial of Inocencio's motion to dismiss and RENDER judgment for Inocencio.

---

or pointed his weapon at officers and relying on *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016) and *Knoulton*, 542 F.3d at 129).

[8] To be sure, "an exercise of force that is reasonable at one moment can become unreasonable in the next if the justification for the use of force has ceased." *Ramirez*, 163 F.4th at 209 (quoting *Mason v. Lafayette City-Par. Consol. Gov't*, 806 F.3d 268, 277 (5th Cir. 2015)). However, Jenkins makes no such assertion in this case.

[9] Jenkins herself acknowledges that her wrongful death and survival actions depend on her excessive force claim, and, because the excessive force claim fails, so too do her state law claims.