# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

October 26, 2021

Lyle W. Cayce
Clerk

No. 20-10830

Terrence Harmon; Sherley Woods, as Administratrix
for the Estate of O'Shea Terry,

*Plaintiffs—Appellants*,

*versus*

City of Arlington, Texas; Bau Tran,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-696

Before Jones, Southwick, and Engelhardt, *Circuit Judges*.
Edith H. Jones, *Circuit Judge*.

Officer Bau Tran fatally shot O'Shea Terry, who was trying to drive his SUV away while Tran stood on the vehicle's running board. Terry's estate and Terrance Harmon, a passenger in the car, sued Tran under 42 U.S.C. § 1983 for using excessive force. Tran moved to dismiss the case based on qualified immunity. His defense hinges on whether he reasonably perceived an imminent threat of personal physical harm in the short interval

between Terry's starting the engine and when Tran began shooting. The district court upheld Tran's defense, dismissing the claims against him and the City of Arlington, a codefendant. We agree that plaintiffs did not plausibly allege an unconstitutional use of excessive force by Tran, did not rebut his qualified immunity, and therefore had no claim for municipal liability. Thus, we AFFIRM.

## I. Background

A City of Arlington police officer pulled over O'Shea Terry and his passenger, Terrance Harmon, for driving a large SUV with an expired registration tag. The officer approached the car and asked Terry and Harmon for identification. After taking their information, the officer advised them that she smelled marijuana coming from the car and, as a result, had to search it. In the meantime, another police officer, Defendant Bau Tran, arrived on the scene and approached the car from the passenger's side next to a curb. While the first officer went back to her patrol car to verify Terry's and Harmon's information, Tran waited with the two men. Tran asked them to lower the windows and shut off the vehicle's engine, and Terry at first complied. Dashcam and bodycam videos capture what happened next.

After some small talk, Terry started raising the windows and reaching for the ignition. Tran immediately shouted "hey, hey, hey, hey," clambered onto the running board of the SUV, and grabbed the passenger window with his left hand. Tran reached through the passenger window with his right hand and yelled "hey, stop." Tran retracted his right hand and rested it on his holstered pistol. Then Terry fired the ignition and shifted into drive. Just after the car lurched forward, Tran drew his weapon, stuck it through the window past Harmon's face, and shot 5 rounds, striking Terry four times.

Terry lost control, careened across the opposite lane, and jumped the curb. The force of the SUV hitting the curb knocked Tran off and onto the

street. As Tran rolled over the asphalt, the car's rear tires just about hit Tran's flailing limbs. Harmon then gained control of the SUV, got it back onto the street, and stopped it. An ambulance took Terry to the hospital, but he did not survive.

Terry's administratrix and Harmon sued Tran under 42 U.S.C. § 1983 for Tran's alleged violation of the Fourth Amendment. They also sued the City of Arlington, contending that Tran's use of excessive force could be imputed to the city because of its repeated failure to discipline Tran in the past and its broader custom of using excessive force with racial bias. They also alleged various state-law claims.

Tran moved to dismiss the case on the pleadings and asserted qualified immunity as a defense. The City of Arlington also moved to dismiss the municipal liability claims against it for failure to state a claim. The district court granted those motions. The plaintiffs have appealed the judgment, except as to the state law claims.

## II. Standard of Review

Appellate review of a district court's Fed. R. Civ. Pro. 12(b)(6) dismissal on the pleadings is *de novo*. *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). In conducting that review, the court accepts "all well-pleaded facts as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Id.* The court does not, however, "presume true a number of categories of statements, including legal conclusions; mere labels; threadbare recitals of the elements of a cause of action; conclusory statements; and naked assertions devoid of further factual enhancement." *Id.* (cleaned up) (quoting *Ashcroft v. Iqbal.*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). Moreover, where video recordings are included in the pleadings, as is the case here, the video depictions of events, viewed in the light most favorable to the plaintiff, should be adopted over the factual

No. 20-10830

allegations in the complaint if the video "blatantly contradict[s]" those allegations.[1] *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776 (2007).

## III. Discussion

On appeal, the plaintiffs advance three arguments. First, the plaintiffs argue that Tran is not entitled to qualified immunity because his use of excessive force violated a clearly established constitutional right. Second, Tran violated Harmon's rights by shooting Terry and thereby seizing the entire SUV, including Harmon, the passenger. Finally, the City is liable for Tran's use of excessive force. We discuss each claim in turn.

### A. Qualified Immunity

Tran is entitled to qualified immunity at the motion-to-dismiss stage unless the plaintiffs have alleged facts sufficient to plausibly show that (1) the defendant's conduct violated a constitutional right and (2) the constitutional right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S. Ct. 808, 816 (2009). The plaintiffs cannot satisfy either of these standards.

### 1. Constitutional Violation

Because Officer Tran used deadly force to "seize" Terry, the relevant Fourth Amendment questions are whether the force was "excessive" and "unreasonable" as "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 1872 (1989) (citation omitted). That calculus "must embody allowance for the fact that police officers are

---

[1] The video is available on YouTube: https://www.youtube.com/watch?v= bh08la7J0_s (last visited Oct. 4, 2021). The video contains both dashcam footage and bodycam footage of the incident.

No. 20-10830

often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

In evaluating whether the officer used "excessive" force, courts consider the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). The threat-of-harm factor typically predominates the analysis when deadly force has been deployed. Accordingly, this court's cases hold that "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009) (citation omitted). A court must "be cautious about second-guessing [the] police officer's assessment" of the threat level. *Ryburn v. Huff*, 565 U.S. 469, 477, 132 S. Ct. 987, 991-92 (2012) (per curiam). The question for this court is whether Tran could reasonably believe that Terry posed a serious threat of harm.

The reasonableness inquiry is inherently factbound, making the video of this ten-second event critical.[2] *Scott*, 550 U.S. at 383, 127 S. Ct. at 1778 (2007). While Tran was waiting with Terry and Harmon, Terry abruptly rolled up the windows and reached for his keys. Tran immediately shouted "hey, hey, hey, hey" and "hey stop," grabbed onto the SUV's passenger

---

[2] The court cannot accept as true plaintiffs' allegation that Tran climbed onto the running board in "an effort to gain a good angle to shoot" Terry because that allegation is a conclusory statement about Tran's subjective intent. *See Iqbal.*, 556 U.S. at 678, 129 S. Ct. at 1949. Moreover, plaintiffs' allegation that Tran was "never exposed to any risk of harm or injury by Terry or Harmon" is a legal conclusion that the court need not accept as true. *Id.* And, in any event, the latter allegation is "blatantly contradicted" by the video recording. *See Scott*, 550 U.S. at 380, 127 S. Ct. at 1776.

5

No. 20-10830

window, and stepped onto the running board (a narrow ledge at the base of the SUV doors designed to assist passengers climbing into the car). Ignoring Tran's commands to stop what he was doing, Terry started the car, put it in gear, and started to drive off—with Tran hanging onto the passenger window, perched on the narrow running board. Before Terry accelerated, Tran kept his pistol holstered. But about a second after the car lurched forward, Tran drew his pistol and shot Terry four times.

That brief interval—when Tran is clinging to the accelerating SUV and draws his pistol on the driver—is what the court must consider to determine whether Tran reasonably believed he was at risk of serious physical harm. *Cf. White v. Pauly*, --- U.S. ---, 137 S. Ct. 548, 550 (2017) (per curiam). That belief was reasonable. [3]

Indeed, what came next illustrates the danger Tran faced. Several seconds after Tran shot Terry, while the SUV was still moving, Tran fell off the running board and into the busy street.[4] Common sense confirms that

---

[3] This court has recognized the obvious threat of harm to an officer on the side of a fleeing vehicle in several unpublished opinions, and in every one, this court affirmed qualified immunity. *See, e.g.*, *Mazoch v. Carrizales*, 733 Fed. App'x 179 (5th Cir. 2018) (affirming qualified immunity for officer who shot driver after being dragged from side of car with arms trapped in windows); *Davis v. Romer*, 600 Fed. App'x 926 (5th Cir. 2015) (same for officer standing on running board who shot driver of fleeing vehicle headed for a highway); *Owens v. City of Austin*, 259 Fed. App'x 621 (5th Cir. 2007) (same for officer who shot fleeing driver while trapped in window and being dragged).

Terry's representative attempts to distinguish the two dragging cases by pointing out that when Tran shot Terry, Tran was not being dragged and not at risk of being dragged because the window was mostly open. But the threat of harm inquiry does not ask whether the officer *was* harmed, only whether he could reasonably perceive a threat of serious physical harm. Here, like the officer in *Davis v. Romer*, Tran assuredly could perceive such a threat.

[4] Compounding the danger here, the dashcam video shows about four dozen cars traversing the street during the entire encounter.

falling off a moving car onto the street can result in serious physical injuries. Moreover, as Tran tumbled across the asphalt, the car's rear tires nearly overran his limbs. That this near miss occurred after Tran had shot Terry is of no moment; it confirms that Tran could reasonably perceive a serious threat of harm as Terry drove away with Tran holding onto the SUV.

The plaintiffs attempt to refute that conclusion by arguing that being "at" the side of a moving vehicle does not pose a threat of harm because "the existence of the threat generally turns on whether the person is in the vehicle's path." But Tran faced a different threat altogether. The threat of falling from a vehicle in motion is unrelated to whether Tran was in the vehicle's path. As a result, Terry's analogy to cases where officers were "at" the vehicle's side, and not in its path, falls flat.

The plaintiffs also contend that Tran could have simply stepped off the running board and let Terry drive away, the availability of that alternative, they argue, makes Tran's use of deadly force unreasonable. But qualified immunity precedent forbids that sort of Monday morning quarterbacking; the threat of harm must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396, 109 S. Ct. at 1872. Heeding the Supreme Court's admonition, this court consistently rejects such arguments. *See Thompson v. Mercer*, 762 F.3d 433, 439-40 (5th Cir. 2014) (rejecting hindsight argument that officers would not have faced threat of harm if they had acted differently); *Fraire v. City of Arlington*, 957 F.2d 1268, 1275-76 (5th Cir. 1992) (similar). Moreover, the plaintiffs' reliance on *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009), to support their hindsight argument is misplaced. In that case, this court looked at the weak logical nexus between the officer's conduct and the threat of harm to the officer as part of its inquiry into the reasonableness of the officer's use of deadly force. *See id.* at 412 (concluding that "[i]t is unclear how firing at the back of a fleeing vehicle

some distance away was a reasonable method of addressing the threat" to the officer). This court did not, however, condone an open-ended inquiry into every alternative course of action—such an inquiry is inimical to established qualified immunity doctrine. *See id.* at 412-13.

Finally, the plaintiffs argue that Tran shot too quickly, about a second after the engine was engaged, for his use of deadly force to be reasonable. The speed with which an officer resorts to force can factor into the reasonableness analysis, but only where officers deliberately, and rapidly, eschew lesser responses when such means are not only plainly available but also obviously recommended by the situation. *See Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012) (considering the allegation that officers "immediately resorted to taser and nightstick" against a mostly compliant suspect "without attempting to use physical skill, negotiation, or even commands."). Here, Tran did not have the luxury of engaging in negotiation or deliberation, though he commanded Terry to stop reaching for the ignition. Tran was on the side of an accelerating vehicle and had to act quickly. We cannot conclude that the speed with which he resorted to force impairs the reasonableness of his actions.

Significantly, the plaintiffs have cited no case in which a law enforcement officer, holding onto a suspect's car as it drove away, has been held to have used unconstitutionally excessive force to restrain the driver. In sum, taking the facts in the light most favorable to the plaintiff and drawing every reasonable inference in plaintiff's favor, Tran's use of deadly force was not excessive under the circumstances because he could reasonably apprehend serious physical harm to himself as an unwilling passenger on the side of Terry's fleeing vehicle.

No. 20-10830

## 2. Clearly Established Law

Even if they could allege sufficient facts showing a constitutional violation, the plaintiffs do not show that Tran violated any "clearly established" constitutional right.  The burden here is heavy:  A right is "clearly established" only if preexisting precedent "ha[s] placed the . . . constitutional question beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S. Ct. 2074, 2083 (2011).  And, as the Supreme Court has repeatedly admonished lower courts, we must define that constitutional question with specificity.[5]  Indeed, "[t]he dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'"  *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S. Ct. 305, 308 (2015) (per curiam) (emphasis in original) (quoting *al-Kidd*, 563 U.S. at 742, 101 S. Ct. at 2084).

The specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force. The results depend "'very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."  *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1153 (2018) (per curiam) (quoting *Mullenix*, 577 U.S. at 13, 136 S. Ct. at 309).  To overcome qualified immunity, the law must be so clearly established that *every* reasonable officer in this factual context—an officer holding onto the side of a fleeing car where the driver has ignored instructions to stop— would have known he could not use deadly force.

The plaintiffs here attempt to identify relevant, "clearly established" law in only two cases: *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009) and

---

[5] *See, e.g.*, *City of Escondido v. Emmons*, --- U.S. ---, 139 S. Ct. 500, 503 (2019) (per curiam); *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1152 (2018) (per curiam); *City & Cty. of San Francisco v. Sheehan*, 575 U.S. 600, 613, 135 S. Ct. 1765, 1775-76 (2015) (per curiam); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 101 S. Ct. 2074, 2084 (2011).

*Tennessee v. Garner*, 471 U.S. 1, 105 S. Ct. 1694 (1985). But neither case clearly establishes squarely governing precedent.

In *Lytle*, a police officer fatally shot a teenage passenger in a fleeing car that was, allegedly, "three or four houses down the block" from him. *Lytle,* 560 F.3d at 409. This court rejected the officer's qualified immunity defense because "by the time the [car] was three or four houses away, a jury could conclude that any immediate threat to [the officer] had ceased." *Id.* at 413. From *Lytle*, the plaintiffs concoct a clearly established prohibition on using deadly force, "in the context of a suspect declining a vehicular traffic stop," against "a fleeing felon who does not pose a sufficient threat of harm to the officer or others." That formulation, however, is not specific enough or factually apposite. It fails to incorporate the important facts that the officer in *Lytle* fired at the vehicle when it was at a distance and driving away from him. Officer Tran, in contrast, shot when the SUV started moving while he stood on the running board. The danger he faced was both direct and immediate. *Lytle* does not in any way clearly establish the law that *every* reasonable officer in Tran's position would have known he could not use deadly force.

The plaintiffs also attempt to extract, from *Lytle* and several out-of-circuit cases,[6] the principle that "an officer lacks an objectively reasonable basis for believing his own safety is at risk—and therefore cannot use concerns about his own safety to justify deadly force—when he is not in the path of the vehicle." That *Lytle* and those other cases do "clearly

---

[6] *Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020); *Cordova v. Aragon*, 569 F.3d 1183 (10th Cir. 2009); *Kirby v. Duva*, 530 F.3d 475 (6th Cir. 2008); *Waterman v. Batton*, 393 F.3d 471 (4th Cir. 2005); *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756 (2d Cir. 2003); *Scott v. Edinburg*, 346 F.3d 752 (7th Cir. 2003); *Vaughan v. Cox*, 343 F.3d 1323 (11th Cir. 2003); *Abraham v. Raso*, 183 F.3d 279 (3d Cir. 1999).

establish" such a principle is dubious.[7] Be that as it may, it has no bearing on this case. An officer standing at the side of a fleeing vehicle faces a different risk calculus than the officer clinging onto the side of a fleeing vehicle. *Lytle* and the other cases cannot put the constitutional question "beyond debate."

The plaintiffs' additional reliance on *Tennessee v. Garner* is wholly unpersuasive. In *Garner*, police officers were pursuing a young man who had stolen a purse and $10. 471 U.S. at 3-4. As the purse-snatcher scaled a fence, one of the police officers shot him in the back of the head. *Id.* at 4. Terry's claim that *Garner* clearly establishes a prohibition on the use of deadly force where the "suspect poses no immediate threat to the officer and no threat to others" is far too general. The Supreme Court has repudiated this defective reasoning. *See, e.g.*, *Kisela*, 138 S. Ct. at 1153 (rejecting use of broad formulation of *Garner*'s holding); *White*, 137 S. Ct. at 552 (same); *Mullenix*, 577 U.S. at 13, 136 S. Ct. at 309 (same); *Brosseau v. Haugen*, 543 U.S. 194, 199, 125 S. Ct. 596, 599 (2004) (per curiam) (same).[8] At most, *Garner* prohibits using deadly force against an unarmed burglary suspect fleeing on foot who poses no immediate threat. Viewing *Garner* through that narrower lens, as we must, reveals that *Garner* does little to establish law so that *every*

---

[7] The Supreme Court has repeatedly expressed uncertainty about whether circuit-level precedent is controlling for purposes of qualified immunity. *See Dist. of Columbia v. Wesby*, --- U.S. ---, 138 S. Ct. 577, 591 n.8 (2018*); Carroll v. Carman*, 574 U.S. 13, 17, 135 S. Ct. 348, 350 (2014); *Reichle v. Howards*, 566 U.S. 658, 665-66, 132 S. Ct. 2088, 2094 (2012).

[8] *Lytle v. Bexar County* is premised on a similarly broad reading of *Garner*. *See Lytle*, 560 F.3d at 417-18 (noting that it "has long been clearly established that . . . it is unreasonable for a police officer to use deadly force against a fleeing felon who does not pose a sufficient threat of harm to the officer or others.") (citing out-of-circuit case that relies on *Garner*, 471 U.S. at 11). As a result, it is dubious whether *Lytle* lives on after cases like *Mullenix v. Luna*, where the Supreme Court rebuked this court for relying on the same overly broad reading of *Garner*. *See Morrow v. Meachum*, 917 F.3d 870, 879 (5th Cir. 2019).

reasonable officer in Tran's shoes would have known he could not use deadly force.

Finally, the plaintiffs argue that this is an "obvious" case under *Garner*, rendering it unnecessary to identify any particular case that puts the constitutional question beyond doubt. No doubt "obvious" excessive force cases can arise.[9] But they are so rare that the Supreme Court has *never* identified one in the context of excessive force. Because this officer faced an all too "obvious" threat of harm, further speculation based on *Garner* is out of line.

The clearly established inquiry is demanding, especially in claims for excessive force. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). Because the plaintiff must point to a case almost squarely on point, qualified immunity will protect "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 1096 (1986). Here, the plaintiffs failed to identify any clearly established law that would place beyond doubt the constitutional question in this case, whether it is unreasonable for an officer to use deadly force when he has become an unwilling passenger on the side of a fleeing vehicle. As a result, their excessive force claims cannot succeed.

## B. Harmon's excessive force claim

Harmon's excessive force claim fails not only because Tran is entitled to qualified immunity, but also because, as a passenger, Harmon failed to state a valid Fourth Amendment claim in his own right. During this litigation, Harmon pressed two theories of liability. In the district court, Harmon

---

[9] This court purported to identify one "obvious" *Garner*-based case in *Cole v. Carson,* 935 F.3d 444, 453-54 (5th Cir. 2019) (en banc), but *Cole* has no offspring in this court.

argued that Tran used excessive force by firing his weapon in close proximity to Harmon's face. That is a bystander theory. On appeal, Harmon argues that Tran seized him "by deliberately shooting the driver of the moving car," which was unreasonable because Tran used excessive force to do it. Neither theory works.

Harmon's bystander theory fails because "there is no constitutional right to be free from witnessing . . . police action." *Grandstaff v. Borger*, 767 F.2d 161, 172 (5th Cir. 1985). Bystander excessive force claims can only succeed when the officer directs the force toward the bystander—that is to say, when the bystander is not really a bystander. *See Coon v. Ledbetter*, 780 F.2d 1158, 1160-61 (5th Cir. 1986). In *Coon*, for instance, a police officer allegedly fired heavy buckshot into a trailer home while trying to apprehend its owner. *Id.* at 1159-60. Coon's four-year-old daughter was in the trailer when the police officer shot. *Id.* at 1160. Coon's wife, on the other hand, watched from behind the firing line. *Id.* at 1161. Coon's wife and daughter brought § 1983 claims against the police officer, arguing that he violated their Fourth Amendment rights. *Id.* at 1160. This court rejected the wife's claim, but because the daughter was in the trailer and thus subject to the officer's gunfire, the court allowed the daughter's claim to proceed. *Id.* at 1160-61. Indeed, the court noted, "[t]here was no evidence that any act of the deputies was directed towards" the wife. *Id.* at 1161. In this case, Harmon does not allege that Tran fired indiscriminately into the car. Rather, he alleges that Tran "stuck his gun through the passenger window—mere inches away from the face of Harmon—and fired." Like Coon's wife, he was not within the purview Tran's gunfire. Thus, Harmon's bystander theory fails.

Because Harmon failed to raise his other theory in the district court, it is waived. *See Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 257 n.15 (5th Cir. 2008). Even if Harmon had articulated that theory below, it would still fail because, as already explained, Tran is entitled to qualified immunity.

No. 20-10830

### C. Municipal liability claims

The final issue is whether the district court erred in dismissing Terry's and Harmon's claims against the City of Arlington. The plaintiffs press two theories of municipal liability: the City failed to discipline Tran, despite having actual knowledge of his repeated incidents of allegedly violent misconduct; and the City had constructive knowledge of the Arlington Police Department's alleged custom of using excessive force with racial bias. A governmental entity, however, may only be held liable in a § 1983 suit when the complained-of constitutional injury, here the use of excessive force, results from "execution of a government's policy or custom." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018 (1978). Because plaintiffs failed to allege a predicate constitutional violation by Tran, the result is preordained: These claims cannot succeed.

### IV. Conclusion

For the forgoing reasons, the judgment of the district court is Affirmed.