# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 10, 2023

Lyle W. Cayce
Clerk

No. 22-60548

_____

Jason Hines, *Individually and as Wrongful Death Beneficiary* and *as Survivor of Austin Hines*,

> *Plaintiff—Appellant*,

*versus*

Lowndes County, Mississippi; Eddie Hawkins; Thomas Culpepper; John Does 1-15; Thomas Honnoll,

> *Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 1:21-CV-52

_____

Before Clement, Elrod, and Willett, *Circuit Judges*.

Per Curiam:[*]

This appeal involves two deputies who fired at a suspect, killing him, after he led a citywide chase, abandoned his vehicle, stole a police vehicle, sped narrowly past one officer, and then drove straight at another. The district court held that qualified immunity protects the deputies. We AFFIRM.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-60548

I

On April 1, 2020, a detective from the Lowndes County Sherriff's Office saw a vehicle that failed to observe a stop sign. The vehicle had been reported stolen earlier that day, and the detective recognized the vehicle's driver as Austin Hines ("Austin"). The detective turned on his lights, but Austin kept driving, and a chase ensued. The pursuit lasted about 20 minutes, during which Austin:

- led police through populated areas;
- drove through yards and ditches;
- ran civilians and police officers off the road;
- swerved into the left lane of traffic, including through blind curves and over hills;
- ignored multiple stop signs;
- hit several civilian vehicles, including an 18-wheeler;
- collided with a law enforcement vehicle; and
- reached speeds of over 90 mph.

Austin eventually lost control of the vehicle, wrecked it, and abandoned it. He continued on foot and soon encountered another detective. That detective fired a single shot at Austin after "see[ing] something in his hand," but Austin escaped. The detective's shot is not at issue here. After firing it, the detective called over the radio: "Shots fired. Shots fired. He's got a gun."

Deputy Culpepper and Deputy Honnoll (the "Deputies") were on foot in a nearby clearing, and they each heard the detective's gunshot and his radio call. The Deputies and other officers began searching the clearing, but they could not locate Austin. Their body cameras captured what happened next. A police truck came careening through from the right side of the clearing, traveling in front of the Deputies and perpendicular to a pair of

railroad tracks to their left. The Deputies ignored the truck at first, but then they saw Austin behind the wheel, and they realized he had stolen it. As the two Deputies gave chase on foot, Austin sped past a constable, only narrowly avoiding running him over. When Austin arrived at the railroad tracks, he turned left. That decision brought him back toward the general area of the clearing, but it also put him on a path directly toward Captain Higgins, who was on the tracks as part of the search.

Seeing that Austin had aimed the stolen police truck "right towards [Captain] Higgins," Deputy Culpepper opened fire at the truck. Deputy Honnoll opened fire too, for the same reason. In total, they fired about 18 shots. The stolen truck came to a stop a few feet from Captain Higgins, and the officers called a ceasefire. Austin suffered multiple gunshot wounds and died as a result.

Austin's father ("Hines") sued Deputy Culpepper and Deputy Honnoll in state court under 42 U.S.C. § 1983, alleging that they violated Austin's Fourth Amendment right to be free from excessive force. Hines also asserted state-law claims against both Deputies, sued additional defendants, and relied on additional causes of action that are not relevant here. The Deputies removed the case to federal court.

The Deputies moved for summary judgment based on qualified immunity. The district court agreed, first concluding that "Honnoll's and Culpepper's use of force was reasonable," because when they opened fire, they had reason "to believe Austin posed a serious threat to at least one officer." *Hines v. City of Columbus*, No. 1:21-CV-52-DMB-RP, 2022 WL 4587450, at *6 (N.D. Miss. Sept. 27, 2022). The district court next concluded—in the alternative—that "[e]ven had the facts alleged amounted to a constitutional violation, [Hines] cannot show Honnoll or Culpepper violated a clearly established constitutional right." *Id.* at *7. The court

reasoned that "Austin was driving in the direction towards at least one other officer," and that Hines had "failed to identify any clearly established law that would place beyond doubt the constitutional question in this case, whether it is unreasonable for an officer to use deadly force when he observes a fleeing vehicle driving towards a fellow officer." *Id.* (internal quotation marks and citation omitted).

The district court granted summary judgment for the Deputies on Hines's § 1983 claim, and it remanded Hines's state-law claims to state court. This appeal timely followed.

## II

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it could "affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* We view all of the evidence "in the light most favorable to the nonmoving party," and we "draw[ ] all reasonable inferences in that party's favor." *Kariuki v. Tarango*, 709 F.3d 495, 501 (5th Cir. 2013). Even so, "'we assign greater weight, even at the summary judgment stage, to the . . . video recording[s] taken at the scene.'" *Baker v. Coburn*, 68 F.4th 240, 244 (5th Cir. 2023) (alteration in original) (quoting *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)).

Once an official raises qualified immunity, "'the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's . . . conduct violated clearly established law.'" *Id.* (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "We review

the district court's grant of summary judgment de novo, applying the same standard as the district court." *Id.* at 244–45.

## III

"Qualified immunity shields . . . state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation omitted). When either prong is conclusive, a court need not address the other. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Under the second prong, "[t]he burden here is heavy: A right is 'clearly established' only if . . . precedent has placed the constitutional question beyond debate." *Harmon v. City of Arlington*, 16 F.4th 1159, 1165–66 (5th Cir. 2021) (alteration adopted) (internal quotation marks and citation omitted). "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Id.* (alteration adopted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam)). "The specificity requirement assumes special significance in excessive force cases, where officers must make split-second decisions to use force." *Id.* "To overcome qualified immunity, the law must be so clearly established that *every* reasonable officer . . . would have known he could not use deadly force." *Id.* (internal quotation marks and citation omitted).

Under the qualified-immunity test's second prong, the district court defined the particular conduct at issue as: "whether it is unreasonable for an officer to use deadly force when he observes a fleeing vehicle driving towards a fellow officer." *Hines*, 2022 WL 4587450, at *7 (internal quotation marks and citation omitted). Hines does not dispute this framing on appeal, nor does he offer any alternative statement of the specific conduct at issue. Indeed, he mentions the "clearly established" prong only once, on the penultimate page of his opening brief.

Hines makes a cursory attempt to identify clearly established law that prohibits the specific conduct at issue, but he relies on only a single decision from this court: *Lytle v. Bexar County*, 560 F.3d 404 (5th Cir. 2009). There, we held that "[i]t has long been clearly established that, *absent any other justification* for the use of force, it is unreasonable for a police officer to use deadly force against a fleeing felon who *does not pose a sufficient threat of harm to the officer or others*." *Id.* at 417 (emphases added). But *Lytle* is not analogous to this case. The Deputies knew that Austin was driving a vehicle toward Captain Higgins when they opened fire. *Lytle* did not clearly establish anything about what is reasonable when a suspect in a large truck drives directly toward an officer who is on foot. Because Hines has not shown that the Deputies' unlawful actions (if any) violated Austin's clearly established rights, we need not (and do not) address the test's first prong.

Hines's arguments cannot overcome this conclusion. To begin, he cites a number of out-of-circuit cases in which "courts have found police officers' shooting of fleeing motorists to be unreasonable." But, like *Lytle*, these cases are not on point, because none of them involves a fleeing suspect who was accelerating *toward* someone when the officer fired. *See, e.g.*, *Adams v. Speers*, 473 F.3d 989, 992 (9th Cir. 2007) (officer fired shots from "in front of the [suspect's vehicle] as it rolled backwards away from him"); *Smith v. Cupp*, 430 F.3d 766, 770 (6th Cir. 2005) (autopsy showed that officer had fired only after the suspect passed him). Hines can prevail only if *he* identifies authority placing Austin's rights "beyond debate." *Harmon*, 16 F.4th at 1165. And he has failed to meet this burden.

Hines next argues that a fact question remains as to whether the stolen police truck posed a threat to Captain Higgins. But the Deputies' body-camera footage shows Austin driving the stolen truck right at the Captain. Even if Austin's angle of approach was sometimes off by a few degrees, or if the Captain might have had time to take refuge on the opposite side of the

tracks, he was still in immediate danger when the Deputies opened fire to save him. *See generally Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007) (officer was justified in using deadly force against a car that was accelerating toward him).

Finally, Hines uses the bulk of his brief to build an argument that asks us to look at things from Austin's perspective (rather than the Deputies' perspective). Hines says that when Austin ignored the first stop sign, the vehicle he was driving was merely borrowed (even though it had been reported stolen). When Austin took off on foot and encountered the second detective, Austin did not have a gun, let alone shoot (even though a radio call then proclaimed "Shots fired. He's got a gun."). When Austin drove through the clearing—almost hitting several officers, and then toward another—he was just trying to get back to his girlfriend (even though the officers on the scene could not have appreciated this). And when Austin drove toward Captain Higgins, he was trying to run—not fight (even though he had earlier collided with a police vehicle). Even if Hines is right about all of that, the legal outcome is still the same. That is because "[e]xcessive force claims are evaluated for *objective* reasonableness based on the information *the officers* had when the conduct occurred." *Baker*, 68 F.4th at 247 (emphasis added) (internal quotation marks and citation omitted).

IV

Hines has identified no law—much less clearly established law— holding that the Fourth Amendment prohibits officers from using deadly force against a suspect driving directly toward one of their colleagues during his attempt to escape. Accordingly, we AFFIRM.