# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2024

Lyle W. Cayce
Clerk

No. 22-11210

---

Shandra Hodge,
*Individually and as the surviving mother of Schaston Hodge
and as the administrator of* the Estate of Schaston Hodge,

*Plaintiff—Appellant*,

*versus*

Joshua Engleman; Robert Litvin,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:21-CV-1916

---

Before Higginbotham, Smith, and Elrod, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Officers Engleman and Litvin shot and killed Schaston Hodge after he refused to pull over his vehicle, led the officers on a brief chase back to his home, and exited his car with a gun in his hands. After reviewing the officers' bodycam footage, the district court granted their motion to dismiss on the ground of qualified immunity ("QI") even though Hodge did not include that footage in the pleadings. Treating the dismissal as an implicit conversion to summary judgment, we affirm.

No. 22-11210

I.

Driving home, Schaston Hodge stopped at a stop sign and turned left without signaling.  Litvin and Engleman attempted to pull Hodge over. Despite the officers' lights and sirens, Hodge continued driving for several minutes until he reached his house.  As Hodge parked in his driveway, Engleman jumped out of the police car and sprinted toward Hodge's car with his gun drawn, ordering Hodge to show his hands and step out of the car. Hodge exited the car with a gun in his hands and pointed it at Engleman. Engleman fired, shooting Hodge, and dropped to the ground.[1]  Approaching behind Engleman and seeing him fall to the ground, Litvin also discharged his weapon.  All told, Engleman fired eleven times and Litvin eight, hitting Hodge sixteen times.

Hodge's mother, individually and as the administrator of his estate, sued Engleman and Litvin under 42 U.S.C. § 1983 for excessive force and the Texas Department of Public Safety ("TDPS") and the City of Dallas for failure to train and supervise.[2]  TDPS moved to dismiss, asserting Eleventh Amendment immunity.  The City also moved to dismiss, averring the complaint lacked any factual basis for a claim of municipal liability.  Finally, Engleman and Litvin moved to dismiss, claiming QI.  The district court granted TDPS's and the City's motions but delayed ruling on Engleman and Litvin's motion.[3]

_____

[1] Engleman seems to have dropped to the ground in an attempt to avoid being shot, not because he was shot.  It is unclear from the footage whether Hodge ever actually fired his gun, and no party has made any claims either way.  Because we resolve all genuine disputes in favor of the nonmoving party at this stage, *see infra*, we assume that Hodge did not fire.

[2] Throughout this opinion, we refer to Schaston Hodge as the plaintiff.

[3] The court gave Hodge leave to refile the complaint after granting TDPS's and the city's motions, mooting Engleman and Litvin's first motion.  After Hodge refiled, Engle-

No. 22-11210

In each of their three motions to dismiss, Engleman and Litvin attached body-camera footage. The district court relied on that video to dismiss because of QI. The court explicitly found that the "blatantly contradict[ory]" video meant Hodge's complaint failed to meet the low bar necessary to survive a Federal Rule of Civil Procedure 12(b)(6) motion. 636 F. Supp. 3d 727, 733 (N.D. Tex. 2022) (quoting *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021)).

## II.

We review a Rule 12(b)(6) dismissal *de novo*. *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023). Rule 12(b)(6) motions are "viewed with disfavor and rarely granted." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (cleaned up). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although "we accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, conclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen*, 65 F.4th at 743 (cleaned up).

"If, on a motion under Rule 12(b)(6), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d) (cleaned up). Even if a district court does not "explicitly inform the parties that it was converting the motion to dismiss into a summary judgment

_____

man and Litvin filed a second motion to dismiss that the court denied without prejudice on evidentiary grounds. Defendants then filed a third, which the court granted and is at issue here.

motion, appellate courts may take the district court's consideration of matters outside the pleadings to trigger an implicit conversion." *Trinity Marine Prods., Inc. v. United States*, 812 F.3d 481, 487 (5th Cir. 2016) (quotation marks and citation omitted). On review, "this error is reversible only if [the plaintiff] had no notice or opportunity to refute [the] allegations in the motion to dismiss." *Bolen v. Dengel*, 340 F.3d 300, 312–13 (5th Cir. 2003) (citation omitted). Parties must have at least ten days' notice before the court's ruling that "the court could convert the Rule 12(b)(6) motion into a summary judgment." *Holguin v. U.S. Dep't of Army*, 98 F.3d 1337, 1996 WL 556767, at *2 (5th Cir. 1996) (per curiam) (table) (unpublished) (citing *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1284 (5th Cir. 1990)).[4]

"We review a . . . summary judgment *de novo*, viewing all facts and drawing all inferences in a light most favorable to the non-moving party." *Harville v. City of Houston*, 945 F.3d 870, 874 (5th Cir. 2019) (citation omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists when 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Abdallah v. Mesa Air Grp., Inc.*, 83 F.4th 1006, 1012 (5th Cir. 2023) (quotation marks and citation omitted).

To overcome QI, a plaintiff must make two allegations, which we may address in either order: first, that an officer acted under color of state law and violated a constitutional right. That is a threshold inquiry. "If no constitutional right would have been violated were the allegations established, there

---

[4] *See also Clark v. Tarrant Cnty.*, 798 F.2d 736, 745–46 (5th Cir. 1986) ("[A]bout a year and a half" of notice "that the court might treat Tarrant County's Rule 12(b)(6) motion as a motion for summary judgment since the court accepted evidence outside the pleadings" is more than sufficient.).

is no necessity for further inquiries concerning [QI]." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *limited by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, that the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202 (citation omitted).

## III.

We first address whether the district court properly granted the motion to dismiss.

In its introduction, the court explained that it had "reviewed the Motion, Plaintiff's Response to Defendants' Third Motion to Dismiss, and the appended video evidence." 636 F. Supp. 3d at 731 (cleaned up). When reviewing a 12(b)(6) motion to dismiss, though, a court usually "may rely on only the complaint and its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). And the court must accept all well-pleaded facts as true. *Allen*, 65 F.4th at 743. Although the court may rely on documents that the pleadings incorporate by reference, Hodge did not attach the video evidence to the pleadings, nor did the pleadings refer to the videos sufficiently to incorporate them. *See Dorsey*, 540 F.3d at 338; *Harmon*, 16 F.4th at 1162–64. Therefore, by reviewing the "appended video evidence," the district court moved beyond the pleadings and to the summary judgment stage—thus implicitly converting the motion to dismiss into a motion for summary judgment per Rule 12(d). *See Trinity Marine*, 812 F.3d at 487. By doing so, though, the court did not commit reversible error.

A court "need not advise either party of its intention to" convert the motion. *Holguin*, 1996 WL 556767, at *2 (citation omitted). "The only requirement is that the non-moving party have at least ten days in which to

No. 22-11210

submit its own evidence." *Id.* That ten-day "period begins running when the non-movant is first put on notice that, based on its acceptance of evidence outside the pleadings, the court *could* convert the Rule 12(b)(6) motion into a summary judgment." *Id.*

Defendants filed Engleman's bodycam footage on January 7, 2022. Hodge filed a motion to strike that footage on January 24, claiming, in part, that the lack of Litvin's bodycam footage made Engleman's suspect. Defendants responded with Litvin's bodycam footage on January 26. And, on February 9, the court entered a scheduling order permitting "limited ... discovery of facts necessary for this Court to rule on the assertion of [QI] by defendants." That same day, Hodge filed a reply brief in support of the motion to strike the videos, and everything else in this litigation happened afterwards—including (1) Hodge's first amended complaint on April 4; (2) defendants' second motion to dismiss on April 18; (3) Hodge's response on May 9; (4) defendants' third motion to dismiss on October 6; (5) Hodge's response on October 10; and (6) the order granting dismissal on October 21.

When the court entered that scheduling order, it implicitly placed Hodge on notice that the court had accepted evidence outside the pleadings.[5] Thus, the ten-day period required by *Holguin* began running on February 9, 2022. Hodge had well more than ten days, though. He had eight months' worth of time, notice, and opportunity to consider the video, to take steps to cast doubt on it, and to submit contrary evidence. That is more than sufficient.[6]

---

[5] *See also In re Deepwater Horizon*, 761 F. App'x 311, 313–14 (5th Cir. 2019) (per curiam) (unpublished) ("The court's request to submit the releases and BP's compliance with that request, therefore, put the plaintiffs on notice that the court was considering matters outside the pleadings and could treat the motion as one for summary judgment.").

[6] Even if Hodge could plausibly claim there was insufficient notice, "error in notice

No. 22-11210

IV.

We turn to whether summary judgment was proper.

In *Scott v. Harris*, the Court clarified the process for reviewing evidence on a summary judgment motion. 550 U.S. 372 (2007). Recognizing that it was bound to resolve all genuine disputes in favor of the non-moving party, the Court explained that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts . . . ." *Id.* at 380. And, it held, where a video in the record brooks no dispute, the court may view "the facts in the light depicted by the videotape." *Id.* at 381.

Our court has applied that standard many times. In *Craig v. Martin*, we reversed a denial of QI, reasoning that where "there is video evidence that 'blatantly contradict[s]' the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts 'in the light depicted by the videotape.'" 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 380–81). In *Harmon*, we similarly relied on a video when we affirmed a dismissal of a § 1983 claim. 16 F.4th at 1162–65. And we followed a parallel approach to *Harmon* and *Craig* in *Livingston v. Texas*, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023) (per curiam) (unpublished). There, we affirmed the summary judgment dismissal of a false arrest and excessive force claim by relying on police dashcam footage

---

is harmless if the nonmoving party admits that he has no additional evidence anyway or if . . . the appellate court evaluates all of the nonmoving party's additional evidence and finds no genuine issue of material fact." *Bolen*, 340 F.3d at 313 (omission in the original) (quoting *Powell v. United States*, 849 F.2d 1576, 1582 (5th Cir. 1988)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); Fed. R. Civ. P. 56(a). As discussed *infra*, any error would be harmless because Hodge has presented no evidence refuting or casting doubt on the videos, and we see no indication of such evidence on our independent review.

that captured the entire incident. *Id.* at *2. The video contradicted the plaintiff's claim of "a genuine dispute that his constitutional rights had been violated," entitling the defendants to QI. *Id.*

In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment. Engleman's and Litvin's bodycam footage is sufficiently clear and whole that there are no genuine disputes of material fact. The videos cover the entire event, from Engleman's and Litvin's pursuing Hodge after he made an illegal turn to their administering first aid after shooting him. Further, they show Hodge raising a gun and pointing it at Engleman, as well as the gun lying on the ground next to his hand after the officers had shot him. Thus, the videos "blatantly contradict" the allegations of the complaint that Hodge "attempted to comply with Litvin's [*sic*] command to show his hands[,]" that "Hodge turned towards the officer to comply[,]" and that "Hodge posed no threat of harm to Litvin and Engleman."[7]

## V.

Finally, having determined that no material facts are in dispute, we turn to whether the undisputed facts support defendants' claim of QI.

To overcome a defense of QI, the plaintiff must show that the defendant violated a constitutional right and that the constitutional right was clearly established. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 740 (5th Cir. 2019) (citing *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017)). We may begin with either prong of that analysis. *Callahan*, 555 U.S. at 236.

Because Engleman and Litvin acted reasonably, they did not violate

---

[7] As the motion to dismiss points out, the complaint switched up the officers, and the amended complaint does not fix that issue. Engleman was the one who first interacted with Hodge.

Hodge's Fourth Amendment rights. Thus, we address only that first prong.

Hodge claims that the use of deadly force was excessive and therefore a violation of his Fourth Amendment rights. "[T]here can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). To establish an excessive force claim under the Fourth Amendment, Hodge must allege "(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting *Tarver v. City of Edna*, 410 F.3d 745, 751 (5th Cir. 2005)). There is no real dispute that the officers injured Hodge. So, the question is whether their use of force was "clearly excessive" and "clearly unreasonable." *Id.*

We evaluate reasonableness with a "calculus" that allows "'for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving . . . .'" *Harmon*, 16 F.4th at 1163 (quoting *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)). The variables include the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quoting *Graham*, 490 U.S. at 396). The solution this court has reached repeatedly is that an officer who "reasonably believes that the suspect poses a threat of serious harm to the officer" may use deadly force. *Id.* (quoting *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)).[8]

---

[8] We evaluate these variables in "the moment of the threat that resulted in the officers' use of deadly force. So, the focus of the inquiry is on the act that led the officer to discharge his weapon." *Amador v. Vasquez*, 961 F.3d 721, 728 (5th Cir. 2020) (cleaned up); *see also Shepherd v. City of Shreveport*, 920 F.3d 278, 283 (5th Cir. 2019) (quoting *Harris v.*

Introducing the video footage to the equation, we solve for the answer that Engleman and Litvin used a reasonable amount of force.  Despite his very minor traffic infraction, Hodge did not pull over when the officers first flashed their lights or when they sounded their siren; he continued driving to his house.  Then, Hodge did not pull into a short driveway and slowly exit his car; he drove deep into a driveway and jumped out of his car.

When Engleman approached him and shouted for Hodge to show Engleman his hands, Hodge pointed a gun at Engleman.  When Engleman saw the gun and Litvin saw Engleman drop to the ground and fire, they each reasonably believed Hodge "pose[d] a threat of serious harm to" them and made "split-second judgments" in that moment to use deadly force against Hodge.  *Id.*  Whether we apply the standard of "a reasonable officer on the scene" or that of a math Ph.D.'s thesis advisor, Engleman and Litvin acted reasonably.  *Id.* (quoting *Graham*, 490 U.S. at 396); *see also Saucier*, 533 U.S. at 204–05.

Because Engleman's and Litvin's use of deadly force was reasonable, Hodge's claim of a Fourth Amendment violation fails.  Without a Fourth Amendment violation, Hodge cannot overcome QI.  Therefore, the summary judgment is AFFIRMED.

───────────────────────────

*Serpas*, 745 F.3d 767, 772 (5th Cir. 2014)).