# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 18, 2024

Lyle W. Cayce
Clerk

———————

No. 23-50471

———————

Christine Springs-Hutchinson, *on behalf of herself and the estate of Isaiah Hutchinson*; Benny Hutchinson, *on behalf of himself and the estate of Isaiah Hutchinson*,

*Plaintiffs—Appellants*,

*versus*

City of Austin; DeAndre Wright; Dane O'Neill; Zachary Woods; Thomas Bernard Nelson, III,

*Defendants—Appellees*.

———————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-221

———————————————————

Before King, Ho, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Isaiah Hutchinson (Isaiah, son of Christine Spring-Hutchinson and Benny Hutchinson) died after exchanging gunfire with police officers during the 2019 South by Southwest music festival. Christine and Benny filed § 1983 claims against the officers and the City of Austin, alleging violations of

———————————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50471

Isaiah's constitutional rights and failures to properly train police officers. But the District Court dismissed their case at summary judgment, finding that no constitutional violation occurred. We agree and AFFIRM.

## I. Background

Demarious Davis drove a Maserati SUV with Isaiah as one of his passengers in the early hours of March 17, 2019, when a Monte Carlo rear-ended them. The City's High Activity Location Observer ("HALO") camera network captured what happened next:

Davis pulled over and the Monte Carlo parked behind him. Davis and Isaiah got out and walked up to the Monte Carlo, and it appears that Davis then punched the driver through an open window at least twice. The driver shot at the pair in response, and they then retreated to the Maserati.

Nearby Austin Police Department Officers working crowd control for South by Southwest heard the shots and came running. At the same time, Isaiah made his way to the Maserati's passenger side, produced a handgun, and fired it at least once at the approaching officers. Officers returned fire as Isaiah dove into the car and the passengers fled. Police found the Maserati later that day, abandoned. In the back was Isaiah, dead from gunshot wounds.

Christine and Benny filed suit against the officers under § 1983 for violations of Isaiah's civil rights under the Fourth and Fourteenth Amendments. They also filed a § 1983 claim against the City for alleged failures to train and discipline police officers. The District Court issued a thorough opinion where it granted summary judgment in Appellees' favor, finding that there was no genuine dispute of material fact that no constitutional violation occurred. Christine and Benny appealed.

No. 23-50471

## II. Standard of Review for Summary Judgment

We review grants of summary judgment *de novo*. *Davidson v. Fairchild Controls Corp.*, 882 F.3d 180, 184 (5th Cir. 2018). When a party moves for summary judgment on an issue where that party bears the ultimate burden of proof, it must establish a prima facie case with admissible evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."*Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Parish Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). We view the evidence in the light most favorable to the nonmoving party, *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006), but "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003). Factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007).

## III. Discussion

### A. Qualified Immunity Bars Appellants' Claims Against the Officers.

Appellants raise § 1983 excessive force claims against the officers, alleging that they violated Isaiah's civil rights under the Fourth and Fourteenth Amendments when they returned fire and killed him. The officers argue that qualified immunity bars Appellants' § 1983 claims. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."

3

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether a government official is entitled to qualified immunity, we must decide (1) whether a plaintiff has alleged facts sufficient to establish a constitutional violation, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). We have discretion to determine the order in which we consider those questions. *Id.* at 236. We begin by considering whether a genuine dispute of material fact exists as to whether a constitutional violation occurred during the events of March 17, 2019. None does, so we AFFIRM.

Using deadly force to apprehend a criminal suspect "is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). To prevail, Appellants must show "(1) injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Malbrough v. Stelly*, 814 F. App'x 798, 802–03 (5th Cir. 2020) (quoting *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)). The analyses of whether a given use of force is "clearly excessive" or "clearly unreasonable . . . are often intertwined." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

We consider the totality of the circumstances in each case when determining reasonableness, including the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). "The threat-of-harm factor typically predominates the analysis when deadly force has been deployed." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021). "An officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Id.*

No. 23-50471

Finally, because of the difficulty associated with "split-second judgments," we judge reasonableness "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* (quoting *Graham*, 490 U.S. at 396). We must be "cautious about second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation." *Id.* (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)).

Appellants contend three genuine issues of material fact preclude summary judgment: (1) whether it was indeed Isaiah who shot at the police, (2) whether Isaiah possessed or fired a gun, and (3) whether officers continued to fire at the Maserati as it fled the scene. We disagree.

*First*, Appellants argue that there is a genuine issue of material fact as to who exactly shot at the police. But our independent review of the record comports with the District Court's thorough analysis. HALO footage shows that the passenger, Isaiah, was the individual who fired at the police, and we view factual allegations arising out of events recorded on video "in the light depicted by the videotape." *Scott*, 550 U.S. at 318. So no genuine dispute of material fact exists concerning the shooter's identity—Isaiah Hutchinson.

*Second*, Appellants argue that there is a genuine issue of material fact as to whether Isaiah possessed or fired a gun. This is untenable. HALO footage makes clear that Isaiah possessed and aimed a gun at the officers, or at bare minimum an object that would appear to be a gun from a reasonable officer's perspective. The footage also shows a muzzle flash emitting from the object (again, almost assuredly a gun) in Isaiah's hand. A reasonable officer in the officer-appellees' position would thus be justified in believing that Isaiah pointed and fired a gun at them.

"[O]fficers use lethal force justifiably if they reasonably believe the individual is reaching for a gun," and we have "adhered to this standard even

5

in cases when officers had not yet seen a gun when they fired, or when no gun was ever found at the scene." *Cloud v. Stone*, 993 F.3d 379, 387 (5th Cir. 2021) (citations omitted). Appellants' theory "fails to provide adequate deference to [the officers'] snap judgment, in the heat of a perilous and rapidly evolving situation, about the danger [Isaiah] posed." *Garza v. Briones*, 943 F.3d 740, 748 (5th Cir. 2019). No genuine dispute of material fact exists concerning whether Isaiah possessed or fired a gun.

*Third*, Appellants argue that there is a genuine issue of material fact as to whether the officers kept firing at the Maserati as it fled. While this is a closer call than the above two issues, our independent review again comports with the District Court's analysis. HALO footage is rather unclear as to when, exactly, the officers ceased fire. As the Maserati began pulling away, officers still had their weapons drawn and aimed. About one second later, one officer falls backward and the footage shifts focus to the Maserati with the officers no longer in frame. Officers no longer had weapons pointed at the fleeing Maserati when the footage shifted back to them about four seconds later.

Uncontroverted evidence confirms that, at the very latest, officers ceased fire when the Maserati reached the frontage road and escaped. *See Shumpert v. City of Tupelo*, 905 F.3d 310, 324 (5th Cir. 2018) ("Plaintiffs still have the burden of adducing evidence that contradicts [the officer's] description of the shooting."). If "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape." *Garner*, 471 U.S. at 11–12. Moreover, "if police officers are justified in firing at a suspect in order to end a severe threat to public safety, the officers need not stop shooting until the threat has ended." *Garza*, 943 F.3d at 748.

Given the "tense, uncertain, and rapidly evolving" situation during the officers' twenty-second encounter with Isaiah described above, we do not believe their continuing to fire until the Maserati reached the frontage road was "clearly unreasonable." *Graham*, 490 U.S. at 396–97. Isaiah was armed, shot at the officers, then fled the scene while still armed. That officers briefly continued firing at an armed assailant who had just shot at them while fleeing does not present a constitutional violation. *See Garza*, 943 F.3d at 748.

There is no genuine dispute of material fact as to whether the officers violated Isaiah's constitutional rights. They did not, so they are entitled to qualified immunity. We AFFIRM.[1]

### B. The City is not Liable under § 1983 Because There is no Underlying Constitutional Violation.

The City qualifies as a "person" to whom § 1983 applies. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). But it "cannot be held liable when its employee[s] did not violate the Constitution." *Malbrough v. Stelly*, 814 F. App'x 798, 806 n.15 (5th Cir. 2020); *see also Harmon*, 16 F.4th at 1168 (dismissing municipal-liability claims because the plaintiffs "failed to allege a predicate constitutional violation by [the officer]"). There is no underlying constitutional violation by the officers to support *Monell* liability against the City for the reasons discussed above, so we AFFIRM.

---

[1] Because there was no genuine dispute of material fact on the constitutional violation prong of the qualified immunity analysis, we do not reach the parties' arguments on the clearly established prong.

No. 23-50471

## IV. Conclusion

There was no genuine dispute of material fact that the officers were entitled to qualified immunity. And because there was no underlying constitutional violation, the City is entitled to summary judgment. We AFFIRM.